IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RICHARD G. ALLEN, # B-02617,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 17-cv-1004-MJR |
| | ) | |
| **KIMBERLY BUTLER,** | ) | |
| **C/O HANKS,** | ) | |
| **SGT. BERNER,** | ) | |
| **SGT. BEBOUT,** | ) | |
| **C/O NARUP,** | ) | |
| **C/O CHILDS,** | ) | |
| **C/O MERCER,** | ) | |
| **C/O BRAKING,** | ) | |
| **C/O JAMES,** | ) | |
| **JOHN DOE (Other Responding Officers),** | ) | |
| **COFFEE,** | ) | |
| **MEYER,** | ) | |
| **JOHN DOE (Placement Officer),** | ) | |
| **JOHN DOE (Nurses),** | ) | |
| **KENT BROOKS,** | ) | |
| **and TEARANCE JACKSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# **MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose during his imprisonment at Menard Correctional Center ("Menard"). Plaintiff claims that he was attacked by a cellmate who was known to have attacked his previous cellmates. Officers allowed the assault to continue, and Plaintiff's injuries were not adequately treated. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-

1

meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

On or about November 4, 2015, Plaintiff's cellmate (Sankey) attacked and severely beat him. (Doc. 1, p. 6). Plaintiff alleges that Sankey was mentally ill and had physically attacked his 2 prior cellmates, facts which were known to the John Doe Placement Officer and other administrative officials including then-Warden Butler. (Doc. 1, pp. 6, 15). Plaintiff was placed into the cell with Sankey some 2-3 weeks before the attack. (Doc. 1, p. 7). When Plaintiff was first brought to the cell, Sankey warned officers that he did not want a cellmate and they should not put anyone else in with him. (Doc. 1, p. 6). Hearing these threats, Plaintiff asked not to be forced into the cell, but the officers told him they had no other cell, and the tactical team would force him in if he refused to enter – so Plaintiff complied. This was a segregation cell with a steel door and plexiglass covering the door and windows, which had no "panic button," and was located at the back of the gallery, lengthening officers' response time in the event of a problem.

As soon as Plaintiff was in the cell, nearby inmates began yelling to warn Plaintiff that Sankey was crazy and attacks his cellies. Later that day, Sankey began talking to himself about wanting to kill somebody, then threatened to kill Plaintiff. During the night Sankey would jump up screaming, talking to the walls, and punching the walls and air.

The next day, Plaintiff informed Hanks of his safety concerns. Hanks told Plaintiff to write a grievance and walked away. (Doc. 1, p. 6). Plaintiff wrote several emergency grievances to the warden (presumably Butler), but got no response.

The following day, Plaintiff alerted several officers of the death threats. In response, Hanks told Plaintiff he wasn't the placement officer and Plaintiff should "quit being a pussy." (Doc. 1, p. 7). Mental health workers Coffee and Meyer documented Plaintiff's fears and his request to move, but told him they could not do anything. After this, Sankey repeated his death

threats and began pushing and shoving Plaintiff.  While Plaintiff was on the yard, he told Bebout and other John Doe Officers about the threats.  Bebout responded, "this is survival of the fittest … unless it's physical we ain't moving your ass.  So, you know what you gotta do."  (Doc. 1, p. 7).  Plaintiff remained in the cell for 2-3 more weeks.  During that time, Hanks observed Sankey pushing Plaintiff, and told him to "knock it off."  *Id.*  Plaintiff again asked to be moved, but Hanks responded that was "not [his] call."  *Id.*

On November 4, 2015, Sankey attacked Plaintiff, punching his face, stabbing him with an ink pen, brutally kicking him, and choking him.  (Doc. 1, pp. 7-8).  Mercer sounded a panic alert.  Officers Braking, Narup, James, Childs, Berner, and several John Doe Officers responded.  Plaintiff bit Sankey during the attack, and got Sankey's blood in his mouth.  The Defendants began spraying mace into the cell, while making comments including, "Ooh, I got that fucker in the mouth . . . in the eyes!  Ooh!  Get him again!" while the attack continued.  (Doc. 1, p. 8).

While Plaintiff was pleading for help, he heard an officer say to "cuff up" and they would open the door.  He broke free and ran to the chuckhole, where he allowed himself to be cuffed behind his back.  Sankey then resumed the attack.  Instead of opening the door, the officers continued to watch the beating.  Mercer said, "We don't open the door until both individuals 'cuff up' willingly.  That's our policy."  *Id.*  They refused Plaintiff's entreaties to open the door, telling him that's what he gets "for being a dumb ass and cuffing up first," and "take it like a man."  *Id.*  One officer said they should at least take Plaintiff's cuffs off to let him fight; Mercer responded, "I'm gonna let the other guy have a little fun with him."  *Id.*  While the officers watched, Sankey banged Plaintiff's head against the steel bed and cell wall.  Each time Plaintiff was able to run to the door, officers would spray him in the face, eyes, and mouth with mace.  (Doc. 1, p. 9).  Eventually, Sankey was overcome by the mace and cuffed up.

4

Plaintiff was taken to a holding cell and was seen by a Jane Doe Nurse. She refused to give Plaintiff anything to counteract the burning effects of the mace, and gave him only Motrin for pain. (Doc. 1, p. 9). Plaintiff asked for an antibiotic shot because he had bitten Sankey on the neck, but the Jane Doe Nurse refused. Plaintiff asserts that Sankey was given a tetanus shot, but he did not get one.

Plaintiff was moved to another cell, which was dirty, smelled of urine, and had feces smeared on the walls. (Doc. 1, p. 10). The mattress was damaged and impossible to sleep on. His skin was red and beginning to peel, and he suffered eye problems including black spots in his eyes, but he never received any treatment to counteract the mace or the pain. Some 20 days after the attack, Plaintiff saw another nurse, who told him that the skin redness would "burn itself out" and did nothing else for him. *Id.*

On November 10, 2015, Plaintiff was called to a disciplinary hearing, but he had never been given prior notice or a copy of the ticket. (Doc. 1, p. 10). Plaintiff told Adjustment Committee members Brookman[1] and Jackson about the lack of notice, but they refused to believe him. Brooks said that they had "gotten the word on you already and no matter what you say your [sic] gonna be guilty." (Doc. 1, p. 11). Brooks and Jackson found Plaintiff guilty of fighting; their summary of the proceeding falsely stated that he admitted guilt. (Doc. 1-1, p. 11). He was punished with 1 month in segregation, and 1 month of C-grade and commissary restriction. *Id.* Plaintiff complains that the lack of notice and the panel's pre-judgment of the disciplinary matter violated his due process rights. Plaintiff wrote numerous grievances over the

---

[1] Plaintiff names "Kent Brooks" as a Defendant, and primarily refers to him by this name in the statement of claim. (Doc. 1, pp. 1-2, 11-12). However, Plaintiff's first reference to this individual, whom he describes as the Chairperson of the Adjustment Committee, identifies him as "Kent E. Brookman," which is how the name appears on the Adjustment Committee's Final Summary Report. (Doc. 1, p. 11; Doc. 1-1, p. 11). The Court presumes that "Brookman" and "Brooks" refer to the same individual, but will use "Brooks" because that is how the name appears in the Complaint's caption and list of Defendants. If a correction is necessary, Plaintiff must submit a motion or amended complaint addressing the matter.

disciplinary matter; all but 1 were never answered. (Doc. 1, p. 12). He complains that the mishandling of grievances is an ongoing problem at Menard, and gives an example of Menard officers tearing up 2 of his grievances in front of Plaintiff's cell while he watched. (Doc. 1, p. 13).

On or about December 30, 2015, Plaintiff was transferred from Menard segregation to Pontiac Correctional Center's Maximum Segregation Unit ("Pontiac"). (Doc. 1, p. 13). While there, he filed a grievance directly to the Administrative Review Board ("ARB") over the events at Menard.

Plaintiff received some treatment at Pontiac for the physical injuries he suffered during the attack at Menard, as well as the psychological effects, which included nightmares, hearing voices, and insomnia. Plaintiff was ultimately diagnosed with Post-Traumatic Stress Disorder and borderline schizophrenia. Plaintiff was prescribed Risperdol and other psychiatric medications (for the first time in his life) to help him sleep. (Doc. 1, p. 14). He is still receiving psychiatric care, and still suffers from fear of officers and other inmates. (Doc. 1, p. 15.)

On or about April 20, 2016, Plaintiff was transferred to Stateville. He continues to have problems with his eyes, including seeing black spots. He still has shoulder pain. (Doc. 1, p. 14).

Plaintiff asserts that Butler and the John Doe Placement Officer must have been aware of Sankey's history of attacking his cellmates, because the warden (Butler) is responsible for signing off on cell placements and disciplinary tickets. Further, these officials had been placed on notice of the long history of violence at Menard as well as the deficient grievance system, based on the reports of the John Howard Association (which Plaintiff attaches to the Complaint). (Doc. 1, pp. 15-16; Doc. 1-1, pp. 25-26; Doc. 1-2; Doc. 1-3, pp. 1-7).

Plaintiff seeks compensatory and punitive damages, as well as a "policy change" to

Menard officers' procedure of refusing to intervene in an attack until both cellmates voluntarily cuff up. (Doc. 1, p. 17; Doc. 1-3, p. 25).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment failure-to-protect claim against Hanks, Coffee, Meyer, Bebout, Butler, and the John Doe Placement Officer, for placing and/or allowing Plaintiff to remain in the cell with a prisoner known to have attacked previous cellmates;
>
> **Count 2:** Eighth Amendment claim against Mercer, Braking, Narup, James, Childs, Berner, and John Doe Responding Officers for allowing Plaintiff's cellmate to continue beating him, including after they handcuffed Plaintiff, and for repeatedly spraying Plaintiff with mace when he came to the cell door trying to escape;
>
> **Count 3:** Eighth Amendment claim against John (Jane) Doe Nurses #1 and #2 for deliberate indifference to Plaintiff's need for medical treatment following the attack;
>
> **Count 4:** Eighth Amendment claim against unknown individual(s) for housing Plaintiff in a filthy cell contaminated with human waste, with a damaged mattress;
>
> **Count 5:** Fourteenth Amendment procedural due process claim against Brooks and Jackson for finding Plaintiff guilty of fighting without giving him prior notice of the charges or impartially considering his evidence.

Counts 1, 2, 3, and 5 shall proceed for further consideration in this action. Count 4 shall be dismissed for failure to state a claim upon which relief may be granted.

### Count 1 – Failure to Protect

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

In Plaintiff's case, before the attack, he informed Hanks, Coffee, Meyer, and Bebout about his cellmate's threats to kill him. Hanks even witnessed the cellmate shoving Plaintiff. Despite Plaintiff's repeated requests to be moved, each of these Defendants failed to take any steps to get Plaintiff out of harm's way. Hanks and Bebout mocked Plaintiff's concerns. Even if these officers were unaware of Sankey's history of violent attacks on other cellmates, Plaintiff brought the specific threats against him to their attention – yet each officer reacted with deliberate indifference to the risk Plaintiff faced. Based on these allegations, Plaintiff may

8

proceed with the claim in **Count 1** against Hanks, Coffee, Meyer, and Bebout for failure to protect him from the attack by Sankey.

Plaintiff also alleges that the John Doe Placement Officer was aware of Sankey's history of attacking 2 cellmates, but ordered Plaintiff to be placed in Sankey's cell anyway. He claims that then-Warden Butler had the same information about Sankey, yet still "signed off" on the placement decision. Before the attack, Plaintiff submitted emergency grievances to Butler to inform her of Sankey's threats against him. It is not clear whether Plaintiff's grievances reached Butler, as he received no response. If, as Plaintiff alleges, Butler and the John Doe Placement Officer knew about Sankey's prior attacks on his cellmates at the time they placed Plaintiff in Sankey's cell (or if Butler received Plaintiff's grievances and took no action), they could be found to be deliberately indifferent to the risk of harm to Plaintiff. At this early stage of the case, Plaintiff may also proceed with the claim in **Count 1** against Butler and the John Doe Placement Officer. However, Plaintiff must identify the John Doe Officer by name before he can be served with the Complaint.

### Count 2 – Failure to Protect and Excessive Force

Correctional officers are not required to place themselves in harm's way when dealing with prison violence. "A prison guard, acting alone, is not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make it clear that such action would put her in significant jeopardy." *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007). However, a defendant's willingness to take affirmative steps aimed at stopping the situation is relevant to whether that defendant showed deliberate indifference. *See id.*; *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) (defendant "took other steps to intervene by promptly calling for back-up and monitoring the fight from the secure area until other officers arrived").

In this case, Mercer, Braking, Narup, James, Childs, Berner, and the John Doe Responding Officers came on the scene after Sankey had commenced his attack on Plaintiff. Plaintiff begged for help, and cooperated with their order to cuff up so that they could open the door. Once he was handcuffed, however, the officers allowed Sankey to continue beating Plaintiff, with Mercer commenting that he would let Sankey "have a little fun with" Plaintiff.

This was not a situation where an officer was acting alone and could not have attempted to intervene without placing himself at significant risk. There were at least 7 officers grouped outside the cell where Plaintiff was being attacked. They did nothing to stop the attack other than spray mace into the cell, much of it directly into Plaintiff's face while he was cuffed and at the cell door begging to get out. They increased the risk of harm to Plaintiff by cuffing him and then leaving him in the cell at the mercy of his attacker. These allegations support a claim for deliberate indifference to Plaintiff's safety while he was being attacked.

Additionally, the officers' repeated spraying of mace into Plaintiff's face while he was cuffed and presenting no threat to them or to his cellmate suggests an excessive use of force. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not

whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001). Here, the Defendants' continued use of mace on Plaintiff appeared to be unnecessary to "maintain or restore discipline," where Plaintiff had already submitted to being handcuffed and was begging to be let out of the cell to escape his attacker.

At this stage, Plaintiff may proceed with his claims in **Count 2** against Mercer, Braking, Narup, James, Childs, Berner, and the John Doe Responding Officers for failure to protect him and for excessive force.

**Count 3 – Deliberate Indifference to Medical Needs**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth

Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff claims he had visible injuries from the beating, stabbing, and mace. Soon after the attack, he told the first Jane Doe Nurse[2] about his pain and exposure to the cellmate's blood. These allegations satisfy the objective component of an Eighth Amendment claim. The Jane Doe Nurse #1 gave Plaintiff Motrin, but did nothing to help Plaintiff relieve the burning from the mace on his skin and in his eyes. She refused to give Plaintiff antibiotics, a tetanus shot, or any other attention related to the blood exposure. While Plaintiff cannot dictate his own treatment, the minimal response to his medical needs indicates that Jane Doe Nurse #1 may have been deliberately indifferent to his condition.

Similarly, when Plaintiff saw another nurse 20 days later, she gave him no treatment to help with the pain he continued to suffer from the mace exposure. At that time, Plaintiff claims his skin was visibly red and beginning to peel. Those circumstances may also amount to deliberate indifference on the part of Jane Doe Nurse #2.

**Count 3** may therefore proceed for further consideration, once Plaintiff identifies the Jane Doe Nurses #1 and/or #2 by name.

### Dismissal of Count 4 – Unsanitary Cell

In a case involving conditions of confinement in a prison, two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities" such as food, medical care, sanitation, or physical safety, creating

---

[2] While Plaintiff identifies these unknown nurses as "John Doe Nurses," his narrative shows that both are female. For clarity, the Court shall direct the Clerk to designate the first nurse who attended Plaintiff as "Jane Doe Nurse #1." The second nurse who saw him 20 days later shall be designated as "Jane Doe Nurse #2."

an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). *See also Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012) (depending on severity, duration, nature of the risk, and susceptibility of the inmate, prison conditions may violate the Eighth Amendment if they caused either physical, psychological, or probabilistic harm). The second requirement is a subjective element – establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842.

Here, Plaintiff claimed that after he was removed from the cell where he was attacked by his cellmate, he was placed in a dirty cell that smelled of urine and had feces on the walls. He was unable to sleep on the damaged mattress. These conditions may satisfy the objective component of an Eighth Amendment claim, but Plaintiff does not say how long he was required to endure those unsanitary conditions, or what health effects he may have experienced as a result. Equally important, Plaintiff does not disclose whether he complained about the conditions to any Menard officials, and if so, how they responded. Because Plaintiff has not linked this claim to any individual Defendant, and did not include sufficient factual allegations to support both elements of an Eighth Amendment claim, **Count 4** shall be dismissed at this time without prejudice, for failure to state a claim upon which relief may be granted.

### Count 5 – Procedural Due Process in Disciplinary Hearing

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner 24 hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the

action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

In addition to complying with the requirements elaborated in *Wolff*, the disciplinary hearing board's decision must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). To determine whether this standard has been met, courts look to whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

Taking Plaintiff's allegations as true, the basic due process requirement of advance notice was not met in this case. Further, Brooks' comment at the hearing that Plaintiff would be found guilty "no matter what [he] say[s]" undermines the requirement that the disciplinary panel must be impartial. (Doc. 1, p. 11). These allegations indicate that 2 of the *Wolff* procedural protections were not followed.

In addition, Plaintiff asserts that the panel's decision relied on the "evidence" that Plaintiff admitted guilt. (Doc. 1-1, p. 11). Plaintiff vigorously denied that he ever pled guilty, both at the hearing, and in the Complaint. Plaintiff's narrative suggests that Brooks and Jackson did not hear or consider his account of being the victim of a vicious attack. However, the report references a responding officer's statement that Plaintiff and his cellmate were "violently throwing closed fist punches at one another" as the basis for the decision. *Id.* Taken together, these circumstances may call into question whether the low standard of "some evidence" to support the decision was met.

At this early stage, Plaintiff's claim in **Count 5** that Brooks and Jackson violated his right to procedural due process by failing to give him advance notice of the hearing, and failing to

14

impartially consider all the evidence before finding him guilty, may proceed for further consideration.

The Court notes, however, that Plaintiff does not appear to have a viable substantive due process claim for deprivation of a liberty interest without due process. Even though the hearing may not have complied with procedural due process requirements, Plaintiff's punishment was limited to only 1 month in disciplinary segregation, and the loss of some privileges for a month. When a disciplinary confinement is that short in duration, no due process liberty interest is implicated regardless of the conditions of that confinement. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days in segregation did not state a claim); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days in segregation stated no claim, in the context of plaintiff's 12-year sentence).

## **Identification of Unknown Defendants**

Plaintiff shall be allowed to proceed with his claims in Count 1 against the John Doe Placement Officer, Count 2 against the John Doe Responding Officers, and Count 3 against Jane Doe Nurses #1 and #2. However, these Defendants must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the John Doe Placement Officer, John Doe Responding Officers, and Jane Doe Nurses #1 and #2 are

discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

## Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

The motion for service of process at government expense (Doc. 4) is **TERMINATED AS MOOT**. No such motion is necessary for a Plaintiff who has been granted leave to proceed *in forma pauperis* ("IFP"). The Court shall order service on all defendants who remain in the action following threshold review under § 1915A. 28 U.S.C. § 1915(d).

## Disposition

The Clerk is **DIRECTED** to modify the Defendant listed on the docket sheet as "John Doe Nurses" to **JANE DOE NURSES (#1 and #2)** as discussed in **Count 3**.

**COUNT 4** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The Clerk of Court shall prepare for Defendants **BUTLER, HANKS, BERNER, BEBOUT, NARUP, CHILDS, MERCER, BRAKING, JAMES, COFFEE, MEYER, BROOKS,** and **JACKSON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the

Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendants **JOHN DOE PLACEMENT OFFICER, JOHN DOE RESPONDING OFFICERS, or JANE DOE NURSES (#1 and #2)** until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 6, 2017**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court

18