UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RICHARD G. ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:17-cv-1004-GCS |
| | ) | |
| KIMBERLY BUTLER, | ) | |
| MARK HANKS, | ) | |
| JOSHUA BERNER, | ) | |
| NICHOLAS BEBOUT, | ) | |
| BENJAMIN NARUP, | ) | |
| BRYAN CHILDS, | ) | |
| NICHOLAS MERCER, | ) | |
| MICHAEL JAMES, | ) | |
| MELISSA COFFEY, | ) | |
| CORTNEY MEYER, | ) | |
| KENT BROOKMAN, | ) | |
| TERRANCE JACKSON, | ) | |
| STEPHANIE SCHAEFER, and | ) | |
| SHARON A. MCGLORN,[1] | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Richard G. Allen, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed suit pursuant to 42 U.S.C. § 1983 alleging that the Defendants failed to protect him from an attack by his cellmate and that his injuries were not treated appropriately following the attack. Before the Court is a motion for summary judgment by Defendants Melissa Coffey, Cortney Meyer, and Sharon A. McGlorn (the "Wexford

---

[1] The Clerk of Court shall correct the docket sheet to reflect the complete and correct spellings of Defendants' names.

Defendants") filed on August 1, 2019, and a motion for summary judgment by Defendants Nicholas Bebout, Joshua Berner, Kent Brookman, Kimberly Butler, Bryan Childs, Mark Hanks, Terrance Jackson, Michael James, Nicholas Mercer, and Benjamin Narup (the "IDOC Defendants") filed on September 3, 2019. (Doc. 106, 112).

Allen, through appointed counsel, failed to respond timely to either motion, and the undersigned granted Allen leave to file responses out of time during a November 18, 2019 status conference. (Doc. 117). The responses were due December 9, 2019, but Allen responded only to the motion filed by the Wexford Defendants. (Doc. 120). To date, no response to the IDOC Defendants' motion has been filed. For the reasons delineated below, the Wexford Defendants' motion is granted in part, and the IDOC Defendants' motion is granted.

## FACTUAL BACKGROUND

Allen did not specifically respond or object to the statement of undisputed material facts in the Wexford Defendants' motion, so the Court lays out the facts as stated by Defendants. Additionally, pursuant to Local Rule 7.1(c), the Court, in its discretion, may consider Allen's failure to file a timely response to the IDOC Defendants' motion an admission of the merits of the motion.

At all times relevant to his complaint, Allen was incarcerated at Menard Correctional Center. Four counts survived merit review pursuant to 28 U.S.C. § 1915A:

    Count 1:  Eighth Amendment failure to protect claim against Defendants Hanks, Coffey, Meyer, Bebout, and Butler for placing and/or allowing Plaintiff to remain in a cell with a prisoner known to have attacked previous cellmates;

> Count 2: Eighth Amendment claim against Defendants Mercer, Narup, James, Childs, and Berner for allowing Plaintiff's cellmate to continue beating him, including after they handcuffed Plaintiff, and for repeatedly spraying Plaintiff with mace when he came to the cell door trying to escape;
>
> Count 3: Eighth Amendment claim against Defendants McGlorn and Schaefer for deliberate indifference to Plaintiff's need for medical treatment following the attack; and
>
> Count 5: Fourteenth Amendment procedural due process claim against Defendants Brookman and Jackson for finding Plaintiff guilty of fighting without giving him prior notice of the charges and without impartially considering his evidence.

(Doc. 7, p. 7).

### 1. Claims Against the Wexford Defendants

Defendant Melissa Coffey was employed by Wexford Health Sources, Inc. as a qualified mental health professional at Menard from October 27, 2014, through February 4, 2016. (Doc. 107-2). Defendant Cortney Meyer worked as clinical social worker for Wexford at Menard from August 18, 2014, through April 30, 2016, and as a qualified mental health professional at Menard since May 1, 2016. (Doc. 107-3). Wexford employed Defendant Sharon McGlorn as a nurse practitioner at Menard from August 17, 2015, through August 19, 2016. (Doc. 107-4).

Allen had a physical altercation with his cellmate, Inmate Sankey, on November 4, 2015. At his deposition, Allen testified that he told Defendant Meyer that he feared for his safety and asked her to have him moved from his cell at some point before the altercation, but he could not recall a specific date when the conversation took place. (Doc. 107-1, p. 26). Defendant Meyer reviewed Allen's medical records and concluded that she

only saw him once during his time at Menard for fifteen minutes on December 14, 2015, well after the altercation. After noting that Allen reported that he felt depressed but had no suicidal or homicidal ideations, she deferred him and set a follow-up for 30 days later. Allen was transferred to Pontiac Correctional Center before Meyer could follow-up. (Doc. 107-3).

Allen had two documented interactions with Defendant Coffey before the altercation with his cellmate. He testified that he told Defendant Coffey that Sankey was threatening to kill him and that he felt he was in danger, though he could not recall when the conversation happened. (Doc. 107-1, p. 27). Allen's mental health records show that he spoke with Coffey at 12:10 p.m. on October 27, 2015. (Doc. 107-5, p. 1). Coffey noted that Allen told her, "Yeah, I'm good." *Id.* Allen did not remember telling Coffey he was good, but he explained that he would not have wanted to say anything negative in front of Sankey out of fear. (Doc. 107-1, p. 28). He acknowledged that Coffey may not have gotten the impression that he was only saying he was good because Sankey could hear him. *Id*.

Allen also testified that he asked Coffey if he could speak to her in her office, but she told him that she came through the segregation gallery every week and that was his opportunity to speak with her. *Id*. Coffey does not recall Allen requesting to speak with her in her office, and it is her custom and practice to write down all complaints or requests for additional counseling made during her mental health rounds. Her records do not reflect that Allen made a request for additional counseling or to speak with a mental health professional during her rounds on October 27, 2015. (Doc. 107-2).

Allen spoke with Coffey again at 12:45 p.m. on November 3, 2015. (Doc. 107-5, p. 2). Coffey wrote that Allen told her he was "just close to doin' somethin" and was "ok." *Id.* He denied having any suicidal or homicidal ideations. *Id.* Coffey noted that she discussed Allen's desire to be moved to a different cell with a correctional officer. *Id.* Allen testified that he told Coffey it was Sankey who was getting close to doing something and that he could not recall whether Coffey told him that she spoke to a correctional officer about moving Allen to a different cell. (Doc. 107-1, p. 28). Coffey explains that she did not have the authority to have an inmate transferred to a different cell, so she passed his request to a correctional officer. (Doc. 107-2). Allen does not believe Coffey spoke to anyone about transferring him because he was not moved. (Doc. 107-1, p. 28). Coffey did not see or treat Allen after November 3, 2015.

Allen was seen in the healthcare unit at 4:15 a.m. on November 4, 2015, following the altercation with his cellmate. His medical records reflect that he reported his back was a little sore and that he rated his pain as an 8. The nurse noted a scratch on Allen's mid-back with no bleeding and gave him a three-day supply of ibuprofen. (Doc. 107-6, p. 1-4). Defendant McGlorn reviewed the report and indicated that she wanted to see Allen at the next sick call. *Id.* at p. 2. McGlorn noted in Allen's medical records that the altercation involved biting, and she ordered HIV and Hepatitis ABC testing. *Id.* at p. 7.

Defendant McGlorn saw Allen on the nurse practitioner call line on November 24, 2015, for a follow-up. She noted that his wounds on his left arm and back were healing and that his blood test results were still pending. *Id.* at 8. She did not note any injuries caused by pepper spray or mace, and she maintains that it is her custom and practice to

do so whenever injuries are present. (Doc. 107-4). She did not treat Allen again before his December 31, 2015 transfer to Pontiac. *Id.*; (Doc. 107-6, p. 10). Allen continued to report pain from a stabbing incident to healthcare staff at Pontiac after his transfer. (Doc. 107-6, p. 11-16). He was transferred to Stateville Correctional Center on April 16, 2016, and his May 2, 2016 medical records reflect for the first time a complaint to medical staff related to being pepper sprayed on October 4, 2015. *Id.* at p. 20.

At his deposition, Allen testified that the pain from his injuries was a 10 and that his back injury was caused by being stabbed with a pen. (Doc. 107-1, p. 37). He testified that he was bleeding and that there was swelling. *Id.* at p. 38. Allen also explained that, while he had to wait until November 19, 2015, for his blood testing, he heard that Inmate Sankey was tested the day after the altercation. *Id.* at p. 39. He conceded that Defendant McGlorn could not treat him after he was transferred to Pontiac. *Id.* at p. 41.

### 2. The IDOC Defendants

Allen first met Inmate Sankey when they became cellmates in segregation in October 2015. He testified that Sankey was yelling threats and was angry when Allen was put in the cell with him, so Allen told Defendant Hanks that he did not want to go in the cell with Sankey. Hanks made Allen go in the cell. (Doc. 113-1, p. 4). Allen claims that other inmates immediately began warning him that Sankey was crazy and that he had attacked other inmates. In the first week of being assigned to the cell, Allen also complained to Defendant Bebout about Sankey being crazy and threatening him. *Id.* at p. 5-6. According to Allen, Bebout told him to "stop being a punk" and to "do what you've got to do." *Id.* at p. 6. Allen also spoke with other officers that week, though during his

deposition he could not recall their names. *Id.* Allen testified that Hanks saw Sankey push him but Hanks refused to do anything. (Doc. 113-1, p. 6).

On November 4, 2015, Defendants Mercer and Narup were near Allen's cell as trays were passed out around 4:15 a.m. (Doc. 113-1, p. 7; Doc. 113-6; Doc. 113-8). Mercer came to the cell door and sounded the alarm upon noticing that Allen and Inmate Sankey were fighting. (Doc. 113-1, p. 7). Defendant Narup arrived after the fight began. Defendant Berner then arrived and ordered the inmates to stop fighting and cuff up, but he was ignored. Berner then used three one-second bursts of pepper spray in the cell. (Doc. 113-7). Allen was cuffed through the chuckhole, but Sankey began striking him again after he was cuffed and would not stop. (Doc. 113-1, p. 9). The continued attack by Sankey prevented correctional officers from opening the door to the cell. (Doc. 113-7). Allen testified that Berner continued using mace to subdue Inmate Sankey, but Allen was also sprayed. (Doc. 113-1, p. 5). Both men were eventually handcuffed and taken out of the cell.

Allen was issued a ticket for fighting. (Doc. 113-2). He wrote a statement before the hearing and brought it with him when he went before the adjustment committee. (Doc. 113-1, p. 17; Doc. 113-4). In the statement, Allen complained that he was not served a ticket within 72 hours of the altercation, rendering the charge against him invalid. He asked that the disciplinary report be dismissed. (Doc. 113-4). Defendants Brookman and Jackson were on the adjustment committee, and they found Allen guilty. Allen received one month of segregation, one month of C grade, and one month of commissary restriction. (Doc. 113-3).

Allen testified that he sued Defendant Butler because he believes that she placed him in the cell, or allowed him to remain in a cell, with a prisoner known to attack his cellmates. (Doc. 113-1, p. 19). According to Butler, she does not make cell assignments and had no knowledge of issues between Allen and his cellmate before the altercation. (Doc. 114-2).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

1. **Failure to Protect Claims**

The Eighth Amendment prohibition on cruel and unusual punishment places a duty on prison officials to protect prisoners from violence at the hands of other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this right, a prisoner must demonstrate that a prison official was deliberately indifferent to an excessive risk to the prisoner's health or safety, which includes an objective and a subjective component. *Id.* First, the harm to which the prisoner was exposed must be one that is objectively serious. *See Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018). Second, the prison official must have actual knowledge of the risk to the inmate. *Id.* Constructive knowledge is not sufficient to establish a constitutional claim. *Id.*

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. "[A] generalized risk of violence is not enough, for prisons are inherently dangerous places." *Wilson v. Ryker*, No. 11-2086, 451 Fed. Appx. 588, 589 (7th Cir. Dec. 12, 2011)(internal citations and quotations omitted). Instead, a plaintiff must allege "a tangible threat to his safety or well-being" and "a substantial risk of future harm." *Id*. In other words, a defendant must know of the substantial risk that those who attack a plaintiff would do so and must fail to take action. *See Sanville v. McCaughtry*, 266 F.3d 724, 733-734 (7th Cir. 2001). Harm to an inmate need not be averted, ultimately, so long as a prison official who actually knew of a substantial risk to inmate health or safety responded reasonably to it. *See Farmer*, 511 U.S. at 844-845. Conduct that

amounts to negligence or inadvertence is not sufficient to sustain a claim. *See Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006).

   2. **Deliberate Indifference to Serious Medical Needs**

Deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)(citation omitted).

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)(citation omitted). The first consideration is whether the prisoner has an "objectively serious medical condition." *Arnett*, 658 F.3d at 750. *Accord Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015)(citing *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir.2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and

wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer*, 511 U.S. at 828 (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm")(internal quotation marks omitted)(emphasis added).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno*, 414 F.3d at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). *See also Hammond*, 123 F. Supp. 3d at 1086 (stating that "isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and

> if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did," *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016))(alterations in original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *See Berry*, 604 F.3d at 441.

### 3. Due Process

The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty and property. *See Marion v. Radtke*, 641 F.3d 874, 875 (7th Cir. 2011). Procedural due process protections require that the inmate receive "advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decisionmaker, and a written explanation supported by at least 'some evidence' in the record, for any disciplinary action taken." *Langstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006)(citations omitted).

A protected liberty interest is limited to freedom from restraints that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). There is no constitutional right to remain in general population, but, for a prisoner sent to segregation, "both the duration and the conditions of segregation must be considered in determining whether due process is implicated." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017).

The Seventh Circuit has routinely held that short durations in segregation do not implicate a liberty interest. *See, e.g., Hoskins v. Lenear*, 395 F.3d 372, 374-375 (7th Cir. 2005)(affirming district court's finding of no due process concerns where plaintiff suffered disciplinary conviction, demotion in status, transfer and 60 day stay in segregation); *Lekas v. Briley*, 405 F.3d 602, 612-613 (7th Cir. 2005)(analyzing conditions of confinement where prisoner spent 34 days in discretionary segregation and 56 days in disciplinary segregation and finding that it did not result in "an atypical and significant hardship"); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1998)(holding that no liberty interest was implicated in 70 day stay in disciplinary segregation, two weeks of which also involved discretionary segregation).

## ANALYSIS

### 1. Failure to Protect Claim against Defendant Coffey and Defendant Meyer

As to Allen's failure to protect claim in Count 1, there is a dispute of material fact regarding whether Defendant Meyer was aware of and deliberately indifferent to a substantial risk of harm posed by Inmate Sankey. While medical records and Meyer's affidavit suggest that she did not meet with Allen before the November 4, 2015 altercation, Allen testified that he did speak with her before the attack and that, in those conversations, he conveyed his concern that Sankey would attack him if the men remained housed in a cell together.

Meyer argues that her custom and practice is to make a note each time that she meets with a patient and that there is no such note related to Allen before December 14, 2015. While the record supports her position, a reasonable juror crediting Allen's

testimony could conclude that Meyer was told about the specific risk Sankey posed to Allen even without a formal note in his health records. This creates a material dispute of fact about Meyer's knowledge. If she was aware of the risk, there is no evidence showing that she took any reasonable action to protect Allen from the threat of harm, which could give rise to liability. Accordingly, Defendant Meyer is not entitled to summary judgment on Count 1.

Allen and Defendant Coffey agree that she was made aware of the risk posed by Sankey, but Defendant Coffey spoke with a correctional officer about Allen's concerns and his desire to be placed in a different cell. As a mental health professional, Coffey could not reassign Allen to a different cell, but she responded reasonably to his warning about his cellmate by speaking with a correctional officer about the potential problem. There is no evidence that this response was unreasonable or rose above the level of negligence or inadvertence as is necessary to prove a claim for failure to protect. As such, Defendant Coffey is entitled to summary judgment on Count 1.

2. **Deliberate Indifference Claim against Defendant McGlorn**

Defendant McGlorn argues that Allen did not have a serious medical need following the altercation with Inmate Sankey. The record would allow a reasonable juror to conclude otherwise. Allen reported to a nurse the morning of the altercation that his pain was at an 8, and Defendant McGlorn reviewed the nurse's report and determined that Allen needed testing for HIV and Hepatitis due to a bite. Defendant McGlorn also indicated she wanted to follow-up with Allen during the next sick call. Pain combined

with a bite injury that required blood testing is sufficient to establish an objectively serious medical condition at the summary judgment stage.

There is insufficient evidence, however, that McGlorn was deliberately indifferent to Allen's medical needs. Allen argues that he initially was given three days of ibuprofen and then not seen again for three weeks. He also argues that his bloodwork and the results of the testing took several weeks. A delay in treatment can rise to the level of deliberate indifference if the delay "exacerbated the inmate's injury or unnecessarily prolonged his pain." *Perez v. Fenoglio*, 792 F.3d 768, 777-778 (7th Cir. 2015)(citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) and *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007)). "Whether the length of delay is tolerable depends upon the seriousness of the condition and the ease of providing treatment." *Id.* (citing *McGowan*, 612 F.3d at 640).

Where a plaintiff complains that treatment was delayed, as opposed to denied, the Seventh Circuit "require[s] that the plaintiff present 'verifying medical evidence' that the delay, and not the underlying condition, caused some harm." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019)(quoting *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)(citing reference omitted)). Specifically, "'a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental[.]'" *Jackson*, 733 F.3d at 790 (quoting *Williams v. Liefer*, 491 F.3d 710, 714-715 (7th Cir. 2007)). That type of evidence is not present in this case.

Similarly, to the extent that Allen disagrees with his treatment, or desired different treatment than what he received, that does not form a basis for a successful deliberate

indifference claim either. To infer deliberate indifference on the basis of a healthcare provider's treatment decision, the decision must be "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Burton v. Downey*, 805 F.3d 776, 787 (7th Cir. 2015)(quoting *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)). There is no evidence before the Court that McGlorn's treating decisions were out of line with professional standards, and, as such, Allen's claim that McGlorn was deliberately indifferent to his medical needs cannot survive summary judgment.

### 3. Claims against IDOC Defendants

Allen failed to respond to the IDOC Defendants' motion for summary judgment within the initial deadline set by the Federal Rules of Civil Procedure. The Court offered Allen an opportunity to respond out of time by extending the deadline to December 9, 2019. Allen, however, only responded to the Wexford Defendants' motion by the deadline. To date, no response has been filed. The Court has reviewed the Defendants' motion and finds persuasive the arguments and evidence presented therein and that judgment should be entered in favor of the IDOC Defendants on all claims.

As to Allen's due process claim, his segregation term was 30 days, which has routinely been held to be too short to implicate a liberty interest. Defendants also present sufficient evidence that they did not fail to protect Allen from a specific, particular threat posed by his cellmate and that their response to the altercation did not go beyond what the Constitution allows. As such, the Court exercises its discretion to deem Allen's failure

to respond an admission of the merits of Defendants' motion and will grant the IDOC Defendants' motion as to all claims.

## CONCLUSION

For the above-stated reasons, the motion for summary judgment filed by Defendants Meyer, Coffey, and McGlorn (Doc. 106) is **GRANTED in part** and **DENIED in part**, and the motion for summary judgment filed by Defendants Bebout, Berner, Brookman, Butler, Childs, Hanks, Jackson, James, Mercer, and Narup (Doc. 112) is **GRANTED**. At the close of the case, the Clerk of Court shall enter judgment in favor of Defendants Coffey, McGlorn, Bebout, Berner, Brookman, Butler, Childs, Hanks, Jackson, James, Mercer, and Narup and against Plaintiff Richard G. Allen. Plaintiff's claim in Count 1 against Defendant Meyer remains pending.

**IT IS SO ORDERED.**

Dated: August 4, 2020.

Digitally signed by Judge Sison
Date: 2020.08.04 09:34:40 -05'00'

GILBERT C. SISON
United States Magistrate Judge