UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD G. ALLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 3:17-cv-01004-GCS |
| KIMBERLY BUTLER, MARK | ) |
| HANKS, JOSHUA BERNER, | ) |
| NICHOLAS BEBOUT, BENJAMIN | ) |
| NARUP, BRYAN CHILDS, | ) |
| NICHOLAS MERCER, MICHAEL | ) |
| JAMES, MELISSA COFFEY, | ) |
| CORTNEY MEYER, KENT | ) |
| BROOKMAN, TERRANCE | ) |
| JACKSON, STEPHANIE SCHAEFER, | ) |
| and SHARON A. MCGLORN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Pending before the Court is Defendants' Motion for Summary Judgment. (Doc. 112). Defendant's Motion is before the Court on Plaintiff's Motion for Partial Reconsideration of the Court's August 4, 2020, Order wherein the Court granted the Motion for Summary Judgment filed by Defendants Bebout, Berner, Brookman, Butler, Childs, Hanks, Jackson, James, Mercer, and Narup (the "IDOC Defendants"). (Doc. 159). Plaintiff filed his Motion for Partial Reconsideration on June 29, 2021. (Doc. 159). In his motion, Plaintiff requested that the Court reconsider the portions of the August 4, 2020, Order as it relates to Defendants Bebout, Berner, Childs, Hanks, James, Mercer and

Narup.[1] (Doc. 159, p. 1). Defendants filed a Response in Opposition to the Motion for Reconsideration on July 8, 2021. (Doc. 160). The Court granted Plaintiff's Motion for Partial Reconsideration on July 13, 2021. (Doc. 161). Plaintiff subsequently filed a new Response in Opposition to the Motion for Summary Judgment on August 30, 2021. (Doc. 163). For the reasons delineated below, the Court **DENIES** the Motion for Summary Judgment. (Doc. 112).

## PROCEDURAL HISTORY

Plaintiff Richard G. Allen, an inmate in the custody of the Illinois Department of Corrections, currently housed at the Murphysboro Life Skills Re-Entry Center ("Murphysboro"), filed this suit pursuant to 42 U.S.C. §1983 on September 19, 2017, alleging that Defendants failed to protect him from an attack by his cellmate that occurred while he was housed at Menard Correctional Center ("Menard"); he further claims that his injuries were not treated appropriately following the attack. (Doc. 1). On November 6, 2017, the Court completed its preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 7). The Court construed Plaintiff's allegations into the following counts:

> **Count 1:** Eighth Amendment failure-to-protect claim against Hanks, Coffey, Meyer, Bebout, Butler, and the John Doe Placement Officer, for placing and/or allowing Plaintiff to remain in the cell with a prisoner known to have attacked previous cellmates;
>
> **Count 2:** Eighth Amendment claim against Mercer, Braking, Narup, James, Childs, Berner, and John Doe Responding Officers for allowing Plaintiff's

---

[1]  Plaintiff noted in Footnote 1 of his Partial Motion for Reconsideration that the Court need not reconsider its decision regarding IDOC Defendants Butler, Brookman, or Jackson. (Doc. 159, p.1, n.1). However, for ease of reference the Court will still refer to the list of Defendants throughout as the "IDOC Defendants."

cellmate to continue beating him, including after they handcuffed Plaintiff, and for repeatedly spraying Plaintiff with mace when he came to the cell door trying to escape;

**Count 3:** Eighth Amendment claim against John (Jane) Doe Nurses #1 and #2 for deliberate indifference to Plaintiff's need for medical treatment following the attack;

**Count 4:** Eighth Amendment claim against unknown individual(s) for housing Plaintiff in a filthy cell contaminated with human waste, with a damaged mattress;

**Count 5:** Fourteenth Amendment procedural due process claim against Brooks and Jackson for finding Plaintiff guilty of fighting without giving him prior notice of the charges or impartially considering his evidence.

*Id.* at p. 7. Counts 1, 2, 3 and 5 of Plaintiff's Complaint survived preliminary review.[2] *Id.* On March 28, 2018, Defendant Cortney Meyer filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies along with a Memorandum of Support. (Doc. 64, 65). The Court denied the Motion on January 3, 2019. (Doc. 83). The remaining Defendants did not file a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies.

On August 1, 2019, Defendants Coffey, McGloran and Meyer (the "Wexford Defendants") filed their Motion for Summary Judgment and Memorandum in Support. (Doc. 106, 107). The remaining IDOC Defendants filed their Motion for Summary Judgment and Memorandum in Support on September 3, 2019. (Doc. 112, 113). Plaintiff filed a Response to the Wexford Defendants' Motion for Summary Judgment on December 20, 2019. (Doc. 125). However, Plaintiff's former court appointed counsel

---

[2] In the present Order, the Court will only reconsider Counts 1 and 2 in relation to the selected IDOC Defendants. Defendants Bebout and Hanks will be considered in Count 1 while Defendants Berner, Childs, James, Mercer, and Narup will be considered in Count 2.

neglected to file a response to the IDOC Defendants' Motion for Summary Judgment.[3] On August, 4, 2020, the Court Granted in Part and Denied in Part the Wexford Defendants' Motion for Summary Judgment and Granted the IDOC Defendants' Motion for Summary Judgment. (Doc. 139). On February 16, 2021, Plaintiff filed a Motion to Withdraw his prior court appointed counsel due to irreconcilable differences. (Doc. 143). The Court granted the Motion on March 26, 2021. (Doc. 147). The Court subsequently appointed new counsel for Plaintiff on April 1, 2021. (Doc. 148). Plaintiff's new counsel filed a Motion to Reconsider the August 4, 2020, Order as to the IDOC Defendants, in an effort to alleviate the negative impact of Plaintiff's prior counsel's negligent treatment. Because Plaintiff only requested that the August 4, 2020, Order be reconsidered as to the IDOC Defendants, only the facts relevant to those allegations will be recounted herein.

## FACTUAL BACKGROUND

On or around October 27, 2015, Plaintiff was placed in a cell with Inmate Sankey in the segregation unit at Menard Correctional Center ("Menard"). (Doc. 113, Exh. 1, p. 101:23-102:14). Prior to this placement, Plaintiff had never met inmate Sankey and indicated that he could not have "identified him as an enemy [prior to being housed with him]". *Id.* at p. 13:14-18; 14:2-5. However, as Plaintiff was on his way to be placed in the cell with Sankey, Plaintiff alleges that numerous inmates warned him about Sankey's violent and aggressive tendencies. *Id.* at p. 18:5-15. Several inmates allegedly warned

---

[3]   Plaintiff's first court appointed counsel neglected Plaintiff's case on numerous occasions. (Doc. 161, p. 2-5). As such, the Court granted Plaintiff's Motion to Withdraw Counsel on March 26, 2021. (Doc. 147). On April 1, 2021, the Court appointed Plaintiff new counsel - Mr. Francis A. Citera. (Doc. 148). The Court appreciates Mr. Citera's and his associate, Mr. Aaron Klein's diligence in their representation of Plaintiff Allen.

Plaintiff that Sankey "was crazy" and had "attacked his last cellie." *Id.* Inmate Harding, who was reportedly moved to another cell because he was attacked by Sankey, began hollering at Plaintiff to "watch out for [Sankey], [because] he's crazy." *Id.* at p. 18:12-15.

As Plaintiff approached the cell, Plaintiff heard Sankey screaming and yelling in anger. (Doc. 113, Exh. 1, p. 14:14-17). At this point, Plaintiff alleges that he put those officers that escorted him to the cell "on alert." *Id.* at p. 14:18-21. Plaintiff specifically recalls that Sankey threatened "you better not put nobody in here with me. I'm warning you," which Defendant Hanks heard. *Id.* at p. 15:3-8. Plaintiff recalls telling Defendant Hanks ("Hanks") that he didn't want to go into the cell because "this guy is belligerent" and "acting aggressive." *Id.* at p. 15:11-15. Hanks reportedly told Plaintiff that he needed "to go in [the cell] or we're gonna call tactical team . . . and put you in there." *Id.* at p. 15:17-19. Plaintiff was then forced to enter the cell with Inmate Sankey. *Id.*

Within the first week of being housed with Sankey, Plaintiff reports that he warned multiple officers about Sankey's behavior towards him prior to being attacked. Plaintiff warned Defendant Bebout ("Bebout") that Sankey was "crazy" and that he was in a "bad situation" because Sankey had attacked his prior cellmate, Inmate Harding. (Doc. 113, Exh. 1, p. 20:21-21:4. Plaintiff reported to Bebout that Sankey was up in the middle of the night, punching the walls, punching the air, talking to people who weren't there and making threats under his breath that he was going to "kill somebody." *Id.* Plaintiff reported that within a day, Sankey's threats to kill were directed towards him. *Id.* at p. 21:20-22. In response to Plaintiff's report, Bebout reportedly told Plaintiff that "this is gladiator school or survival of the fittest" and that he needed to "stop being a punk." *Id.*

at p. 22:3-5. Plaintiff also warned Defendant Hanks about Inmate Sankey's behavior. While Hanks was doing a cell check, Plaintiff noted that Hanks saw Inmate Sankey push him, get up in his face, and "take a swing at him." *Id.* at p. 23:24-24:3. Plaintiff recalled Hanks telling Sankey to "knock it off", and Plaintiff asked Hanks to be removed from the cell. *Id.* at 24:1-3. Hanks reportedly told Plaintiff to file a grievance. *Id.* at p. 24:4-5.

On November 4, 2015, Inmate Sankey purportedly attacked Plaintiff inside their shared cell. (Doc. 113, Exh. 1, p. 29:1-2). Defendant Officers Mercer ("Mercer") and Narup ("Narup") were in the area when the breakfast trays were being distributed to inmates at approximately 4:15 am. (Doc. 113, Exh. 6, 8). Mercer came to the door of the cell that housed Plaintiff and Inmate Sankey and saw that the two were engaged in a physical altercation. (Doc. 113, Exh. 1, p. 27:14-5). Mercer told the two inmates "to knock it off" to no avail and then sounded the panic alarm. *Id.* at p. 27:19-21. Plaintiff claims that he obeyed Mercer's order and allowed himself to be handcuffed, but that Sankey continued to attack him. *Id.* at p. 32:7-33. Narup came to the scene shortly thereafter to assist Mercer. *Id.* at p. 28:19-20. Defendant Sergeant Berner ("Berner") was then called to the scene by Defendant Mercer via radio. (Doc. 113, Exh. 8, p. 1).

When Berner arrived on scene, he instructed Narup to retrieve the cell keys from the armory. (Doc. 113, Exh. 8, p. 1). Narup left to retrieve the keys as instructed. *Id.* Berner reportedly instructed the inmates to stop fighting. (Doc. 113, Exh. 7, p. 1). Plaintiff denies that Berner gave this instruction. (Doc. 113, Exh. 1, p. 33:14-16). Pepper spray was then deployed in an attempt to deescalate the situation. Plaintiff alleges that multiple officers deployed pepper spray because it was coming from two different directions. (Doc. 113,

Exh. 1, p. 55:5-19). Plaintiff noted that the amount of pepper spray deployed made it difficult to breathe. *Id.* at p. 38:4-7. Defendants contend that only Sergeant Berner deployed three one second shots of pepper spray. (Doc. 113, Exh. 8, p. 1). While the fighting had ceased long enough for Plaintiff to be handcuffed, Inmate Sankey continued to strike Plaintiff. (Doc. 113, Exh. 1, p. 32:7-34:19). Plaintiff claims that at some point during this period, Defendant Childs arrived on scene and began cheering Inmate Sankey on to "beat" him along with Defendant Mercer. *Id.* at p. 57:22-24. However, Defendants assert that Defendant Childs was not working on the day of the incident. (Doc. 113, p. 3). Lastly, Plaintiff indicated that when he requested help from Defendant Officer James ("James") that James refused. (Doc. 113, Exh. 1, p. 56:11-16). Plaintiff also noted that James refused to return his wedding band to him and that James stated: "Spoils go to the winner. You got your ass kicked." *Id.* at p. 57:11-12. Once Sankey settled down, he was finally cuffed, and the officers were able to open the door of the cell. *Id.* at p. 39:1-5. Both inmates were then taken to a holding area. *Id.* at p. 39:9-10.

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323). This Court must

consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009)(stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in fact-finding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994), aff'd, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation

omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

## DISCUSSION

### I. Plaintiff's Eighth Amendment Claim for Failure to Protect Against Defendants Hanks and Bebout.

Plaintiff asserts that Defendants Hanks and Bebout violated his Eighth Amendment rights for failing to protect him against Inmate Sankey by allowing him to remain in a cell with inmate Sankey despite the fact that "they knew (1) Sankey had attacked [Plaintiff] as well as other inmates and (2) Sankey had threatened to kill [Plaintiff]." (Doc. 163, p. 4). Defendants in opposition assert that there is "no evidence" that Defendants Hanks and Bebout "had any actual knowledge of any impending harm to Plaintiff from Inmate Sankey." (Doc. 113, p. 7). In this case, the Court finds that Plaintiff has demonstrated that there are significant disputes of fact concerning Defendants protection of Plaintiff that must be left to a jury, and as such the Court **DENIES** Summary Judgment for Count 1 of Plaintiff's Complaint.

Prison officials have a duty to protect prisoners from known risks of violence, including violence at the hands of other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 831-833 (1994). *But see Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005)(finding that a failure

to protect claim cannot be predicated merely on knowledge of general risks of violence in the detention facility). To establish a violation of this right, a prisoner must demonstrate that a prison official was deliberately indifferent to an excessive risk to the prisoner's health and safety. *Id.* Deliberate indifference is proven when (1) the harm to which the prisoner was exposed was objectively serious and (2) the prison official had actual knowledge of the risk to an inmate which they personally disregarded. *See Farmer*, 511 U.S. at 834; *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018); *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008).

As to the second prong, Plaintiff must demonstrate that the prison official had actual knowledge of the risk, not just that the officer should have known about the risk. *See Grieveson*, 538 F.3d at 775. Under this prong, to show that prison officials are aware of a specific, impending and substantial threat to a prisoner's safety, the prisoner may show that he complained to the officials about that specific threat. *See Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). Such a showing is sufficient to defeat summary judgment. *See Baha Eddin Al Momani v. Butler*, Case No. 3:17-cv-01034-MAB, 2020 U.S. Dist. Lexis 180237, at *22-23, 27 (S.D. Ill. Sept. 30, 2020)(denying summary judgment where Plaintiff presented evidence that he informed a correctional officer that his cellmate was "posing a threat," that he was "aggressive," that he feared his cellmate, and that the cell mate made threats stating he was "going to kill [him]").

In this case, both Plaintiff and Defendants agree that the harm to which Plaintiff was exposed was objectively serious. (Doc. 163, p. 5); (Doc. 113, p. 7). However, Defendants contend that neither Bebout nor Hanks possessed the requisite knowledge

sufficient to establish deliberate indifference in Plaintiff's failure to protect claim. (Doc. 113, p. 7). Because Defendants' account is contradictory to that of the Plaintiff's, which contains allegations that Plaintiff indeed informed Defendants Bebout[4] and Hanks[5] of Inmate Sankey's threats and aggressive conduct towards him, the Court cannot grant Defendants' Motion for Summary Judgment as to Count 1.

### II. Plaintiff's Eighth Amendment Claim of Cruel and Unusual Punishment Against Defendants Mercer, Narup, James, Childs and Berner.

Plaintiff alleges that Defendants Mercer, Narup, James, Childs, and Berner violated his right to be free from cruel and unusual punishment when "they handcuffed him (and not Sankey), encouraged Sankey to continue beating [Plaintiff] up while [Plaintiff] was handcuffed, and [by] spraying [Plaintiff] with pepper spray." (Doc. 163, p. 7). Largely, Defendants do not attempt to rebut Plaintiff's testimony, but rather only attempt to justify the Defendants' alleged actions. (Doc. 113, p. 8-9). Therefore, as to Count 2 of Plaintiff's Claim, the Court **DENIES** the Defendants' Motion for Summary Judgment.

---

[4] Plaintiff reportedly informed Defendant Bebout that: "I said [to Bebout], this dude's crazy . . . Listen, man, I'm in a bad situation here. This guy already attacked one person. He's in here threatening me. This guy's humping in the middle of the night . . . He's making threats under his breath that he wants to kill . . . he's gonna kill somebody . . . that's when he started out saying, like making threats to kill somebody, then that turned into me. (Doc. 113, Exh. 1, p. 20:13-21:22).

[5] Plaintiff reportedly informed Defendant Hanks that: "I told . . . Officer Hanks . . . The very first day that I came to the cell I could hear him inside the cell screaming, like yelling threats inside the cell, just talking, like angrily, like really angrily . . . When he opens the cell, [Sankey] started screaming, you better not put nobody in here. Don't put nobody in here with me. I'm warning you. I'm telling you. So that's when I told Officer Hanks . . . right then and there . . . I don't want to go in there. Man, you see this guy's belligerent. This guy's acting aggressive, man, I ain't going up in there with this dude." (Doc. 113, Exh. 1, p. 14:11-15:19).

The right to be free from cruel unusual punishment is another ground under which an inmate's Eighth Amendment rights can be violated. In its prohibition of "cruel and unusual punishments," the Eighth Amendment imposes a duty on prison officials, who must provide humane conditions of confinement. *See, e.g.*, *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993); *Washington v. Harper*, 494 U.S. 210, 225 (1990); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). As a part of this duty, prison officials "must take reasonable measures to guarantee the safety of the inmates." *See Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984). This means that prison officials must act to prevent "unreasonable peril" or to address "preventable, observed hazards that pose a significant risk of severe harm to inmates." *See Anderson v. Morrison,* 835 F.3d 681, 683 (7th Cir. 2016). Plaintiff's testimony calls into question if Defendants' treatment of Plaintiff during the November 4th incident amounted to cruel and unusual punishment under this standard.

First, as to Defendant Mercer, Plaintiff provided testimony indicating that he believed Mercer was "egging on" Sankey to continue beating him once Plaintiff was handcuffed. (Doc. 163, p. 8). In his deposition, Plaintiff stated prison officials were yelling things like: "that ain't no punch. Oh that's all you got? You hit like a girl, whoop, you know whooping and hollering and stuff like that." (Doc. 113, Exh. 1, p. 32:7-33:10). When asked to identify who was saying that, Plaintiff responded, "I know Mercer did." *Id.* at p. 34:24. This testimony creates a genuine issue of material fact as to whether Defendant Mercer encouraged Sankey to continue beating Plaintiff and whether Mercer as an observer could have intervened to protect Plaintiff while he was restrained. Thus,

granting summary judgment on Plaintiff's claims against Defendant Mercer is inappropriate.

Next, regarding Plaintiff's claims against Defendant Narup, the IDOC Defendants attempt to present evidence indicating that Narup was not present during most of the attack. (Doc. 113, p. 8). In Defendant Narup's incident report he notes that "as the C/O's came to cell 49 the two inmates that resid[ed] in that cell were throwing closed fist punches at each other . . . Upon Sgt. Berner's arrival this C/O [Narup] was told to go to the armory and get the keys to open the cell. When this C/O returned with the keys both inmates were cuffed up and compliant." (Doc. 113, Exh. 6). Plaintiff however maintains that Narup "was there during part of [him] being attacked." (Doc. 113, Exh. 1, p. 53:24-54:1-2). This testimony likewise creates a genuine issue of material fact as to whether Defendant Narup observed Plaintiff's beating and whether he breached his duty by failing to intervene.

In relation to Plaintiff's allegations against Defendant James, the IDOC Defendants argue "that there is no evidence whatsoever that Defendant James participated in anyway." (Doc. 113, p. 8). They further argue that Plaintiff admitted "he [was] not sure if Defendants James or Childs did anything." *Id.* at p. 10. However, this is contrary to Plaintiff's testimony. Plaintiff testified "with regard to Officer James, Officer James was there, and during the incident Officer James also – that's another person that I requested some type of deterrent, if you will, for contamination, effects of the mace, and he was really nasty, indifferent." (Doc. 113, Exh. 1, p. 56:11-16). Further, after the November 4th incident, Plaintiff indicated that Defendant James "threw [his] clothes in the cell. He

would not give it to me. He cursed me, told me spoils go to the winner. That's how I remember him, because those were his exact words . . . You got your ass kicked . . . He refused to give me any help." *Id.* at 57:6-14. Plaintiff's statements provide evidence that Defendant James was involved in the incident and also suggests that he did not intervene as he was required to do.

Defendants assert a similar argument for Defendant Childs. Again, Defendants argue that "there is no evidence whatsoever that Defendant Childs participated in anyway." (Doc. 113, p. 8). Defendants asserted that Childs was not scheduled to work on the date of the November 4th incident, but provide no documentation to demonstrate this fact. In contrast, Plaintiff testified "I think [Defendant Childs] was there as well. And that was [one of the] guys cheering on to beat me." (Doc. 113, Exh. 1, p. 57:19-22). Thus, the inconsistencies between the parties' testimony leaves a question for the jury to determine whether Defendant Childs encouraged Inmate Sankey to continue beating Plaintiff while he was handcuffed and whether he put Plaintiff at a serious risk of injury.

Lastly, Defendants do not put forward a specific argument regarding Defendant Berner. However, they generally argue that "Defendants in this case did nothing wrong and acted in such a way as to protect the institution while attempting to protect the inmates involved." (Doc. 113, p. 11). Plaintiff's testimony remains undisputed as to Defendant Berner's involvement. Sergeant Berner arrived on the scene and instructed Defendant Narup to get the keys from the armory. (Doc. 113, Exh. 1, p. 34:5-19). Further, the IDOC Defendants admit that Berner sprayed Plaintiff with mace. (Doc. 113, p. 7). Plaintiff testified that this occurred despite the fact that Plaintiff was handcuffed and that

he was still being attacked by Sankey. (Doc. 113, Exh. 1, p. 35: 4-21). Therefore, there is a factual dispute, and the jury must be left to determine whether Berner's actions were appropriate under the circumstances. As such, Defendants' Motion for Summary Judgment is also **DENIED** for Count 2 of Plaintiff's Complaint.

### III. IDOC Defendants Qualified Immunity

Defendants' final argument is that they are entitled to qualified immunity. (Doc. 113, p. 10-11). Government officials performing discretionary functions generally are shielded from liability for civil damages under qualified immunity if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817-818 (1982). Under the qualified immunity doctrine, a defendant "is entitled to dismissal unless (1) the plaintiffs adequately alleged facts that, if true, would constitute a violation of a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the alleged violation, such that a reasonable public official would have known his conduct was unlawful." *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020) (citations omitted). Plaintiff's testimony, if taken as true, clearly alleges an Eighth Amendment violation, and thus, the first prong is not met. As to the second prong, it has long been established that the risk of an attack by a cellmate constitutes a risk of serious harm and that failing to protect an inmate against such an attack amounts to a constitutional violation. *See Walker v. Atchison*, Case No. 3:14-cv-0429-GCS, 2020 WL 1235682, at *4 (S.D. Ill. Mar. 13, 2020) (citing *Farmer*, 511 U.S. at 834). The second prong is thus not satisfied, and therefore, Defendants cannot by saved by the qualified immunity doctrine.

## CONCLUSION

Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment (Doc. 112). The Court **DIRECTS** the Clerk of Court to reinstate Defendants Bebout, Berner, Brookman, Butler, Childs, Hanks, Jackson, James, Mercer, and Narup in this case.

**IT IS SO ORDERED.**

DATED: March 31, 2023.

Digitally signed by Judge Sison 2
Date: 2023.03.31 17:41:02 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**